UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
ONTEL PRODUCTS CORPORATION, and
FUNTASTIC LIMITED,

          Plaintiffs,

     v.

S.C. CHANG, INC.,

          Defendant.
```

HONORABLE JOSEPH E. IRENAS

CIVIL ACTION NO. 14-7008
       (JEI/KMW)

**OPINION**

**APPEARANCES:**

BESHADA FARNESE LLP
By: Donald A. Beshada, Esq.
108 Wanaque Avenue
Pompton Lakes, New Jersey 07442

EPSTEIN DRANGEL LLP
By: Robert L. Epstein, Esq. (pro hac vice)
    Ashly E. Sands, Esq. (pro hac vice)
60 East 42nd Street, Suite 2410
New York, NY 10165
    Counsel for Plaintiffs

BALDASSARE & MARA, LLC
By: Jennifer Mara, Esq.
570 Broad Street, Suite 900
Newark, New Jersey 07102

PROCOPIO, CORY, HARGREAVES & SAVITCH, LLP
By: Raymond K. Chan, Esq. (pro hac vice)
12544 High Bluff Drive, Suite 300
San Diego, California 92130
    Counsel for Defendant S.C. Chang Inc.

1

**IRENAS**, Senior District Judge:

Plaintiffs Ontel Products Corporation ("Ontel") and Funtastic Limited ("Funtastic") brought this action against Defendant S.C. Chang Inc. ("S.C. Chang" or "Defendant") alleging infringement of United States Patent No. 8,151,577 (the "'577 Patent"), titled "Frozen Beverage Device."

Pending before the Court is S.C. Chang's second motion to dismiss under Fed. R. Civ. P. 12(b)(1).[1]  Defendant argues that the Court lacks subject matter jurisdiction over this action because Plaintiffs lack standing.  For the reasons stated herein, Defendant's motion will be **GRANTED.**

## I.  Background

The '577 Patent, which Plaintiffs attached to their pleadings, was issued on April 10, 2012, to Alfio Bucceri, and assigned to Hydro-Turbine Developments Pty Ltd ("Hydro-Turbine"), an Australian entity.  ('577 Patent, Ex. A to Amend. Compl.)  Plaintiff Ontel, a New Jersey corporation in the business of designing, developing and merchandizing consumer products, sells a frozen beverage container named "Slushy Magic," designed in accordance with the claims of the '577 Patent.  Ontel filed the instant lawsuit against S.C. Chang on

---

[1] Defendant filed its first motion to dismiss in December 2014, after which Plaintiffs filed an Amended Complaint.

2

the grounds that Defendant allegedly sells a product called "Super Slush Cup," which infringes on the '577 Patent.

According to the declaration of S.C. Chang sales manager David Chang, attached to Defendant's first motion to dismiss, this dispute seems to have begun in October 2011, when Hydro-Turbine sent S.C. Chang a letter warning that S.C. Chang was "producing, selling, and/or using frozen beverage devices and methods, which, based on information obtained, are the same or substantially similar to the Hydro-Turbine frozen beverage services and methods."[2]  (Oct. 31, 2011, Warning Ltr., Ex. A to Chang Decl.)  Hydro-Turbine stated that Hydro-Turbine had applied for a patent on the relevant invention and reserved the rights to pursue litigation against S.C. Chang after patent issuance.  (Id.)

On February 10, 2012, counsel for Ontel sent a "follow up warning letter" to S.C. Chang "with the permission of Hydro Turbine Developments PTY LTD and Blizzie Freezer Products LLC."[3]

---

[2] Defendant included a copy of this letter as Exhibit A to Mr. Chang's declaration.  (See Chang Decl.)  Defendant did not attach these documents to its second motion to dismiss.  However, the Court will consider the attachments to the original motion, which shed some light on the relationships between the parties now at issue.

[3] Blizzie Freezer Products LLC, a California-based entity, appears to be an affiliate of Hydro-Turbine.  Defendant attached to its original motion to dismiss the electronic search records from the U.S. Patent and Trademark Office showing that the trademark "Blizzie" belongs to Hydro-Turbine.  In an August 11, 2011, press release, attached to the Chang Declaration, Blizzie Freezer Products announced an agreement with Ontel under which Ontel would distribute the "Slushy Magic" products via direct response television and retail distribution.  (Blizzie Press Release, Ex. E to Chang Decl.)

(Feb. 10, 2012, Ltr., Ex. B to Chang Decl.) Ontel stated that it "is the exclusive U.S. licensee" of Hydro-Turbine's rights in the pending "Frozen Beverage Device" patent application and that it believed S.C. Chang's "Super Slush Cup" product infringed on the claims in that pending application.

Mr. Chang's declaration states that, following negotiations between Hydro-Turbine and S.C. Chang, S.C. Chang agreed to cease sales of its Super Slush Cups as of February 29, 2012. (Chang Decl. ¶ 5) Thereafter, S.C. Chang purchased "Slushy Magic" units from Blizzie Freezer Products in September 2012 for resale to S.C. Chang's customers, and entered into an agreement with Hydro-Turbine and Blizzie Freezer Products to distribute the "Slushy Magic" product in the "fair and show channel." (See S.C. Chang/Blizzie Invoice, Ex. C to Chang Decl.; Sep. 27, 2012, email and ltr. confirming distribution arrangement, Ex. D to Chang Decl.)

During oral argument on the instant motion, which the Court held on August 18, 2015, the parties explained that the present litigation revolves around the "Super Slush Cup" units S.C. Chang sold prior to agreeing to cease such sales in February 2012. Ontel, as the sole plaintiff, filed the initial Complaint in this case. (Compl., Docket No. 1) In the Complaint, Ontel claimed to have had "exclusive rights in and to the '577 Patent

4

throughout the period of Defendant's infringing and unlawful acts" and to still have such exclusive rights. (Id. at ¶ 12)

Defendant, arguing that the Complaint did not include a single factual allegation describing how Ontel acquired rights to the '577 patent from Hydro-Turbine, filed a motion to dismiss for lack of standing. (Docket No. 8) Ontel subsequently amended its Complaint to include Funtastic, a foreign corporation based in Australia that allegedly owns "all right, title and interest in and to the '577 Patent," as a second plaintiff. (Amend. Compl. ¶¶ 4, 15) The Amended Complaint does not explain how Funtastic acquired such rights from Hydro-Turbine. Plaintiffs repeat in the Amended Complaint that Ontel has held exclusive rights to the patent throughout the relevant time period, (id. at ¶ 16), but do not detail in the pleadings how Ontel obtained those rights from either Funtastic or Hydro-Turbine. Defendant filed the present motion to dismiss for lack of standing as to both Plaintiffs soon thereafter.

In their opposition to the instant motion, Plaintiffs provide additional details about the entities at issue. Plaintiffs claim that Hydro-Turbine became a wholly-owned subsidiary of Funtastic in November 2013 and that Hydro-Turbine "granted Funtastic any and all exclusive rights in and to the '577 Patent as of said date." (Plaintiffs' Opposition ("Pls.' Opp.") at 4) Plaintiffs attach a public filing with the

5

Australian Securities & Investments Commission ("ASIC") showing that Funtastic is now the ultimate holding company of Hydro-Turbine. (Funtastic ASIC filing, Ex. A to Drangel Decl.) Further, Plaintiffs' counsel states that he has "reviewed documents that confirm that through November, 2013, Plaintiff Ontel had been granted exclusive rights to the '577 Patent by Hydro and on or after November, 2013, Plaintiff Ontel had been granted exclusive rights to the '577 Patent by Plaintiff Funtastic." (Drangel Decl. ¶ 4, attached to Pls.' Opp.) Finally, Plaintiffs state that if the Court were still not satisfied, they could amend the Complaint once again to include Hydro-Turbine as a party. (Pls.' Opp. at 9)

S.C. Chang argues that Plaintiffs have not cured the standing defect present in the initial Complaint because the Amended Complaint explains neither how Funtastic acquired rights to the '577 Patent from Hydro-Turbine, nor how Ontel obtained exclusive rights to the patent from either Funtastic or Hydro-Turbine. (Motion to Dismiss ("MTD") at 1)

During oral argument, Plaintiffs only further confused the ownership of the '577 patent. S.C. Chang submitted a page from the U.S. Patent & Trademark Office ("USPTO") assignment database showing that, as of May 13, 2015, another entity named Chill Factor Global Pty. Ltd. ("Chill Factor") is the assignee of the '577 patent. Plaintiffs acknowledged that Chill Factor is the

current assignee, and explained that Chill Factor is the same entity as Funtastic.  Plaintiffs also stated that they could submit further documentation as to the relevant parties' rights to the '577 Patent if the Court so desires.

## II.  Legal Standard

Federal Rule of Civil Procedure 12(b)(1) provides that a party may bring a motion to dismiss for lack of subject matter jurisdiction.  Standing being a jurisdictional matter, a motion to dismiss for lack of standing is properly brought pursuant to Rule 12(b)(1).  *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).  If a plaintiff lacks standing at the time a suit is brought, the Court does not have subject matter jurisdiction and must dismiss the case.

Jurisdictional challenges under Rule 12(b)(1) come in two forms: motions that attack the complaint on its face and motions that attack the existence of subject matter jurisdiction in fact, apart from any pleadings.  *Mortensen v. First Federal Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  On a facial challenge, the Court presumes all allegations in the complaint to be true.  *Id*.  By contrast, no such presumption applies on a factual attack, where the Court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  *Id*.  Further, the plaintiff has the burden of proving

that subject matter jurisdiction exists. *Id.* Here, Defendant brings both facial and factual challenges to Plaintiffs' standing. (MTD at 7)

With regards to standing in patent litigation, "a patent grant bestows the legal right to exclude others from making, using, selling, or offering to sell the patented invention in the United States, or importing the invention." *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339 (Fed. Cir. 2007). The Patent Act provides this exclusionary right to a "patentee." *See* 35 U.S.C. § 281 ("A patentee shall have remedy by civil action for infringement of his patent.") "The word 'patentee' includes not only the patentee to whom the patent was issued but also the successors in title to the patentee." 35 U.S.C. § 100(d).

The Federal Circuit has described "three general categories of plaintiffs encountered when analyzing the constitutional standing issue in patent infringement suits." *Morrow*, 499 F.3d at 1339. First are plaintiffs who hold "all or substantially all rights to the patents" and can sue in their name alone. *Id.* at 1340. Second are "exclusive licensees" who "hold some exclusionary rights and therefore are entitled to join the patent owner in enforcing those rights." *Id.* at 1341. Last are those who hold no exclusionary rights and may not participate as a party to an infringement suit. *Id.* at 1339.

**III. Discussion**

As mentioned above, Defendant brings both facial and factual challenges to Plaintiffs' standing. Defendant argues that, in light of the USPTO listing Hydro-Turbine, and then Chill Factor, as the '577 Patent's assignees, neither Funtastic nor Ontel has pled sufficient facts to explain how they obtained rights to the patent. Funtastic does not describe how it acquired "all right, title and interest in and to the '577 Patent" from Hydro-Turbine. (MTD at 8) Ontel fails to describe how it acquired the "exclusive rights" in the patent that would allow it to sue either on its own or with the patent's ultimate owner. (MTD at 10) These are mere "legal conclusions," according to the Defendant, and do not suffice to establish standing. (Id. at 8) For these reasons, S.C. Chang asserts that Plaintiffs cannot survive a facial challenge.

The Court rejects Defendant's facial attack on the pleadings. Plaintiffs have alleged that, "[a]t the time of filing this lawsuit and at all times thereafter, Plaintiff Funtastic has owned all right, title and interest in and to the '577 Patent." (Amend. Compl. ¶ 15) They allege further that "Ontel has held exclusive rights in and to the '577 Patent throughout the period of Defendant's infringing and unlawful acts." (Id. ¶ 16) These allegations do not necessarily conflict with Hydro-Turbine being the "assignee" of the '577

9

Patent according to the April 2012 patent documents.  Applying the generous standard of review associated with a facial attack on the pleadings, the Court finds that the Amended Complaint adequately alleges Plaintiffs' standing to enforce their rights in the '577 Patent.  *See Adidas AG v. Under Armour, Inc.*, No. 14-130-GMS, 2015 WL 3764829, at *3 (D. Del. June 15, 2015) (finding an allegation that a plaintiff "is the exclusive licensee in the United States" for the asserted patents sufficient to establish standing even though the complaint also stated that a second plaintiff "is the owner by assignment of all right, title, and *interest* in and to" the relevant patents) (emphasis in original).

    However, the discussion does not end here.  Defendant also brings a factual attack on the Amended Complaint, which places a heavier burden on Plaintiffs.  Defendant argues that the USPTO listed Hydro-Turbine as the assignee of the '577 during the relevant time period, and Funtastic did not automatically acquire all rights to the patent by becoming the parent company of Hydro-Turbine.  In addition, Defendant claims the evidence shows Ontel, at a minimum, lacks standing to sue without joining the true owner of the patent.  The Court addresses each Plaintiff's standing in turn.

### A. Funtastic

With regards to Funtastic, Plaintiffs argue that the ASIC documents regarding Funtastic becoming the parent company of Hydro-Turbine prove Funtastic is the "one hundred percent (100%) owner of Hydro," and that the evidence obtained during discovery will confirm Funtastic's standing. Defendant argues that Funtastic did not derive rights in the '577 Patent by virtue of becoming Hydro-Turbine's parent.

The Court agrees with Defendant. "Common corporate structure does not overcome the requirement that even between a parent and a subsidiary, an appropriate written assignment is necessary to transfer legal title [of a patent] from one to the other." *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1366 (Fed. Cir. 2010). In *Abraxis*, the Federal Circuit found that AstraZeneca had no legal title – and therefore could not assign title – to patents held by its subsidiaries before those subsidiaries specifically transferred title to their parent entity. *Id.* at 1365-66; *see also Sanofi-Aventis Deutschland GmbH v. Glenmark Pharm. Inc., USA*, No. 07-CV-5855(DMC-JAD), 2011 WL 2609855, at *3 (D.N.J. June 30, 2011) (noting that defendant was correct in pointing out that a corporate party's being "affiliated with or in a parent-subsidiary relationship with the patent owner or exclusive licensee is not sufficient to confer standing").

11

Here, documents showing that Funtastic became Hydro-Turbine's holding company in June 2013 do not prove that Hydro-Turbine assigned rights in the '577 Patent to Funtastic at that time or at any time thereafter.  The new corporate structure did not automatically transfer title in the patent from subsidiary to parent.  That a recent search of the USPTO assignment database indicates Hydro-Turbine assigned rights in the patent to Chill Factor in May 2015 further undermines Funtastic's claim to rights in the patent.

Plaintiffs' mere allegation that Funtastic "has owned all right, title and interest in and to" the patent, along with the ASIC documents, are not sufficient to withstand Defendant's factual attack on Funtastic's standing.  The assurance that discovery will prove Funtastic has standing does not save Plaintiffs' case at this juncture.  Plaintiffs, not Defendant, are in control of the documents necessary to establish standing, and, on Defendant's present motion, Plaintiffs have the burden of proving jurisdiction exists. Based on the evidence presented, the Court is not satisfied that they have done so.[4]

---

[4] Plaintiffs assert, in the alternative, that "the case law supports that the parent company of a wholly-owned subsidiary that owns a patent has standing to sue for an injunction." (Pls.' Opp. at 8)  In support of this argument, Plaintiffs cite to *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574 (Fed. Cir. 1991).  (Id.)  However, while the Federal Circuit did note in *Arachnid* that a party with equitable ownership of a patent may sue for equitable relief – as opposed to money damages, which requires actual title to the patent – that case did not find that a parent entity has equitable ownership of its subsidiary's patents.  The case did not even involve entities with a

### B.   Ontel

Neither is the Court satisfied that Ontel has standing to bring this infringement action, either on its own or with Funtastic.  Plaintiffs have presented no evidence from which the Court can infer that Ontel is an exclusive licensee holding all rights in and to the '577 Patent.  In fact, Ontel's February 2012 warning letter to Defendant stated that Ontel contacted Defendant "with the permission of Hydro-Turbine," and that Ontel is the "exclusive *U.S. licensee* of Hydro's rights" in the patent.  (Feb. 10, 2012, Warning Ltr., Ex. B to Chang Decl.) (emphasis added)  This indicates that Ontel did not hold all substantial rights in the '577 Patent, and would therefore lack standing to sue for infringement on its own.

In light of the Court's findings above, Ontel has not overcome standing concerns by joining Funtastic to the litigation.  An exclusive licensee without all substantial rights to a patent must join the patentee to satisfy prudential standing requirements.  *Morrow*, 499 F.3d at 1340.  Since Plaintiffs have failed to prove that Funtastic holds title to the '577 Patent, the addition of Funtastic to the Amended Complaint does not save Ontel's standing.

---

parent/subsidiary relationship.  Plaintiffs otherwise cite to no authority stating that a parent automatically acquires equitable ownership in its subsidiary's patent.

13

**IV.  Request to Amend the Complaint**

Plaintiffs' opposition requests an opportunity, if the Court were to find that Plaintiffs have not proven Funtastic and Ontel's standing, to amend the complaint once again to "allege additional facts and/or add Hydro-Turbine as a party to the Amended Complaint so there is no question that any and all indispensable parties are part of the Action."  (Pls.' Opp. at 8)  A plaintiff may amend its complaint after a responsive pleading has been filed "with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  "The court should freely give leave when justice so requires."  *Id*.

Defendant has rightly challenged jurisdiction based on a confusing record regarding the ownership and rights in the '577 Patent.  However, this does not appear to be a case in which further amendment of the complaint would be futile.  The Court will therefore allow Plaintiffs to file a motion for leave to file a second amended complaint; a copy of the proposed amended complaint shall be attached to the motion.

## V.  Conclusion

For the reasons set forth above, the Court will **GRANT** Defendant's motion to dismiss Plaintiffs' Amended Complaint. Plaintiffs shall be permitted to file a motion for leave to file a second amended complaint.  An appropriate order accompanies this opinion.

Date: August 31, 2015

                                                      s/ Joseph E. Irenas           
                                                   **Joseph E. Irenas, S.U.S.D.J.**